**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| DEMOCRATIC PARTY OF VIRGINIA,<br><br>Plaintiff,<br><br>v.<br><br>FRANK VEAL, in his official capacity as the South Atlantic Division Manager for the United States Postal Service, GERALD ROANE, in his official capacity as Virginia District Manager of the United States Postal Service,<br><br>Defendants. | No. 3:21-cv-671<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1. With Election Day less than two weeks away and more than 300,000 Virginians likely to attempt to cast their votes by mail, the failure of the United States Postal Service ("USPS" or "the Postal Service") to timely process and deliver election-related mail is threatening to disenfranchise thousands of Virginia voters. Thousands of absentee ballots currently sit at postal facilities throughout the Commonwealth, unprocessed for weeks on end. Absent judicial intervention, an untold number of validly cast absentee ballots will go uncounted in the current election—if voters receive ballots in time to cast their votes at all.

2. While problems are being observed across the Commonwealth, in three counties the significant delay in election mail is particularly egregious. In Albemarle, Portsmouth, and James City Counties, thousands of ballots delivered to postal facilities by the general registrars weeks ago are still outstanding and, weeks later, have not yet even been scanned into USPS's system. Even if these voters do eventually receive their ballots before Election Day, the slowdowns

promise that they will not have sufficient time to send them back with assurance that they will arrive in time to be counted. And even if a ballot reaches the appropriate election official before the receipt deadline, if the official identifies any issues with it that require remediation before it may be counted, the voter will have run out of time to rectify the problem.

3. This alone is a significant problem in an election where Virginia is marking more ballots than ever before as requiring additional information from the voter before they can be counted. Virginia guarantees voters a right to "cure" these issues, but if the ballot does not reach election officials until the very end of the election cycle, that opportunity will have passed.

4. These problems only promise to increase with more ballots entering the postal system as the deadlines for the receipt, curing, and counting of absentee ballots in Virginia's current election swiftly approach. Without intervention by this Court, the consequences on the present election will be dire. To preserve the integrity of the present election, USPS must be ordered to greatly expedite its processing and delivery of election related mail—particularly in Albemarle, Portsmouth and James City—so that voters across the Commonwealth are not unconstitutionally denied their fundamental right to vote.

**JURISDICTION AND VENUE**

5. This action arises under the United States Constitution. This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

6. In addition, this Court has the authority to issue the declaratory relief sought pursuant to 28 U.S.C. § 2201.

7. Venue is proper in this Court and this Division because a substantial number of parties reside in this district and this Division and because a substantial part of the events giving rise to this action occurred in this district and this Division. 28 U.S.C. § 1391(b)(2), (e)(1); L. Civ. R. 3(C).

**PARTIES**

8.      Plaintiff Democratic Party of Virginia ("DPVA") is a political party as defined by Va. Code Ann. § 24.2-101. DPVA's mission is to elect Democratic candidates in local, county, state, and federal elections and to help its members and constituents successfully vote. DPVA runs the coordinated campaign for its slate of candidates in the 2021 elections. As part of this campaign, DPVA closely tracks the status of absentee ballots requested, sent, returned, and processed based on data made available under Virginia's public records laws. DPVA also contacts voters whose absentee ballots have been requested but have not yet been fully processed due to deficiencies, slow delivery, or any other potential problem so that they can help "cure" that ballots such that every lawful vote is counted. The slow processing rate of the USPS has endangered this mission by creating the potential that thousands of absentee ballots will not be delivered and returned in time to be counted under Virginia's statutory deadlines.

9.      Frank Veal, sued in his official capacity only, is the South Atlantic Division Manager for the USPS. The South Atlantic Division is one of four divisions in the Atlantic Postal Area. In his role, Veal oversees the operations and management for the postal districts of Virginia and North Carolina. Encompassing thousands of postal employees across the two states, Veal has resource allocation control for the USPS over much of the mid-Atlantic seaboard and has broad control over the delivery rate of mail within the Division.

10.     Gerald Roane, sued in his official capacity only, is the Virginia District Manager for the USPS. In this role, Roane is responsible for planning and implementing administrative and operating methods that comply with USPS organizational structures and staffing policies across Virginia. Roane also supervises and the day-to-day operations of the USPS in Virginia, including the processing speeds at which the state's facilities run, personnel decisions, and general resource allocation.

## BACKGROUND

11.     Beginning in early 2020, newly installed Postmaster General Louis DeJoy directed the Postal Service to implement significant operational changes nationwide. By cutting overtime and instituting policies that resulted in mail being left undelivered at facilities—both substantial departures from prior practices—the new operational plans resulted in great slowdowns in mail delivery across the nation last year.

12.     In the wake of the 2020 operational changes, there were widespread reports of mail piling up in regional distribution centers and post offices around the country, and of customers experiencing substantial delays and disruptions in mail service. Postal workers reported that drivers were being sent out according to set schedules, regardless of whether all that day's mail was ready for them and loaded onto their trucks—a profound change in the post office's long-standing historical practice.

13.     The new policies particularly impacted elections mail, with the delays making it very difficult for voters and election officials across the nation to meet various deadlines for voting by mail. On July 29, 2020, the General Counsel of the USPS sent letters to 46 states warning them of a mismatch between the states' deadlines related to mail-in voting and the Postal Service's likely delivery times.

14.     The Commonwealth itself acknowledged the mail delay's great potential for disenfranchising large numbers of voters. On August 18, 2020, Virginia joined a multistate coalition in filing a federal lawsuit challenging the "drastic operational changes." In a press release, Virginia Attorney General Mark Herring decried the new policies as "a thinly veiled attack on our democracy and blatant voter suppression."

15.     The actions of the postal service in 2020 were in direct contradiction to the USPS's long-standing policy of giving special priority to official election mail, particularly ballots. Each

year, the USPS convenes an Election Mail Steering Committee comprised of representatives from all sectors of the postal service focused on ensuring that there is a sustained organization-wide focus on all aspects of successfully delivering election mail. In addition to the Steering Committee, employees throughout the country known as Political and Election Mail Coordinators work closely with elections officials in all jurisdictions. Indeed, in several official publications, delivery of election mail is listed as USPS's "top priority."

16. Unfortunately, the 2020 changes did not mark end of major disruptions to the Postal Service's delivery operations. In April 2021, USPS leadership announced a new 10-year plan for the USPS, purportedly designed to stave off financial losses.

17. As part of the 10-year plan, USPS announced that, beginning October 1, 2021, there would be an *additional* slow down to first class mail service. As a result of the October slowdown, the USPS announced that, the standard of delivery for first-class mail would drop from delivery within three days to delivery within five days. It is estimated that the decrease in mail processing and delivery speed will impact almost 4 in 10 pieces of first-class mail, resulting in delivery speeds equivalent to those of the 1970s.

18. Again, the Commonwealth recognized the threat the slowdown posed for voting rights. Less than a week after the new USPS plan took effect, Virginia and 19 other states filed an administrative suit with the Postal Regulatory Commission seeking to invalidate the "multiple unprecedented changes in the Postal Service's operations and service, at a time when reliance on the mail remains at historic levels, and states across the country grapple with a resurgence of COVID-19 cases caused by the Delta variant."

19. Even before the October slowdown, the mail in Virginia was not meeting delivery expectations. In the fiscal quarter ending in June 30, 2021, first class mail in the Richmond district

was delivered on time for two-day mail 82.2% of the time; that number dropped to only 67% for three-to-five-day mail. These numbers were well below the performance of the overall Capital Metro Area (87% and 69.8%) and USPS's own FY2021 annual targets (87.81% and 68.64%).

20.     And the October slowdown began right in the middle of Virginia's 2021 general election. As a result, mailed applications for absentee ballots are taking longer to arrive at local registrars' offices, absentee ballots are taking longer to be delivered to voters, and completed absentee ballots that are deposited in the mail are taking longer to return to election officials for processing and counting.

21.     When an absentee ballot is requested by a voter, Virginia law requires local elections officials to process the request and deliver the ballot to the postal service to be sent to voters within three days of the voters' request. Once delivered to the USPS, postal service employees scan each ballot as it is sent out to voters. Currently, based on data from the Virginia Department of Elections, 28% of requested absentee ballots statewide have remained outstanding with the post office for more than three weeks after the date they were requested and delivered to the Postal Service by general registrars for delivery.

22.     The numbers are even worse in Albemarle, Portsmouth and James City Counties. Ballots deposited with the post offices in these counties are failing to even be scanned into USPS's system in the first instance, indicating that they have not even *begun* their journey to the requesting voters weeks after the Postal Service took possession of them.

23.     The growing problems in these three counties are in direct conflict with the USPS's official policies regarding election mail, which state the Service should often employ "extraordinary policies and procedures that allow ballots to be treated 'better' than First Class Mail where necessary."

24. Based on data from the Virginia Department of Elections, as of October 19, 2021, there were thousands of ballots just sitting, unscanned in USPS facilities in Albemarle, James City, and Portsmouth Counties. These unscanned ballots constituted more than a quarter—and in the case of Albemarle, nearly a half—of all ballots that voters in those jurisdictions had requested, and that the county registrars had delivered to the postal facilities.

| County | Number of Unscanned Ballots | Percentage Unscanned Out of All Ballots Requested |
|---|---|---|
| Albemarle | 2796 | 40% |
| James City | 1115 | 26% |
| Portsmouth | 1021 | 25% |

25. Across all Virginia's counties, the average percentage of unscanned ballots in postal facilities was 10% as of October 19. This accounts for more than 25,000 ballots, or over 6.5% of all absentee ballots thus far issued to voters in this election.

26. The October slowdown comes at a particularly crucial moment for the Virginia electorate because many deadlines relevant to voting by absentee mail ballot are swiftly approaching.

27. These mail delivery delays may have already effectively denied some voters their right to vote. Under Virginia law, an absentee ballot application "made by mail . . . . shall be made to the appropriate registrar no later than 5:00 p.m. on the eleventh day prior to the election in which the applicant offers to vote." Va. Code § 24.2-701(B). For the present election, that deadline is today, October 22, 2021. Because of the USPS slowdown, some voters' applications are likely to miss the deadline, due to no fault of the voter. If the voter is expecting an absentee ballot that never arrives, they may realize too late that they will have to plan another way to vote; and for some

voters, including the severely immunocompromised, disabled, or voters temporary away from Virginia, they may be unable to vote at all, if they do not receive the ballot that they timely requested. Although there is an exception for emergencies, the circumstances that qualify an individual to receive an emergency absentee ballot are tightly limited. *See* Va. Code § 24.2-705.

28.     Once a voter receives an absentee ballot through the mail, the voter must fill it out and deposit it in the mail or a designated dropbox by the close of polls on election day. *See* Va. Code § 24.2-709. In the present gubernatorial election, the deadline will be 7:00 p.m. on November 2, 2021. Here, too, the mail slowdown will burden voters seeking to exercise their right to vote by absentee ballot.

29.     Because of postal delays, the time voters have to cast their vote will be greatly compressed. As one federal court recently recognized in considering the negative impact of similar mail delays on voters' voting rights, "[m]any individuals . . . , rely on the efficient delivery of their mail-in ballots so that they make take the time available to consider the issues and candidates in an election." *Vote Forward v. DeJoy*, 490 F. Supp. 3d 110, 126 (D.D.C. 2020). The slowdown denies voters this capability, making it significantly harder for them to make "informed choices among candidates for office." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346-47 (1995). And, of course, voters whose absentee ballots are not delivered to the voter in time for them to vote and send back that ballot before the close of polls on election day will not be able to cast an absentee ballot at all.

30.     The deadline by which voters must mail their absentee ballots is even earlier if they wish to take all possible precautions to ensure that their votes are counted. Virginia law provides that an absentee ballot may be rendered invalid for any of range of defects. *See* 1 Va. Admin. Code § 20-70-20(C). Under Va. Code § 24.2-709.1(C), the registrar is required to notify voters who

submit defective ballots of their right to cure the ballots only if they are "received by the Friday immediately preceding the day of the election"—here, one week from today, on October 29, 2021.

31. All of the problems the mail slowdown creates with respect to the final mailing deadline apply with equal force to this ballot-cure receipt deadline. The mail delays will force voters who seek to take advantage of these procedural protections to cast their vote on an even more compressed timeline. Moreover, those voters whose timely mailed ballots have defects but do not arrive at the registrar before the deadline due to USPS's failure to promptly process and deliver them may receive no notice that their ballots are defective and in need of curing. And, as with the final deadline, voters whose requested ballots do not arrive until after the ballot-cure receipt deadline will be denied their right to notice of defects altogether.

32. Though Virginia law allows absentee ballots that are deposited in the mail before the close of polls on election day to be counted, even those must be received by election officials before noon three days after the election—November 5, 2021 in the current race. Va. Code Ann. § 24.2-709(B). This final deadline was well-calibrated for USPS's former delivery-within-three days standard for first class mail, allowing time for virtually all ballots that were mailed before the close of polls to reach their destination. But under USPS's new delivery-within-five-days standard for first class mail, ballots that are placed in the mail well before the close of polls—even days before election day—may not reach local registrars in time to be counted.

33. And, as described, USPS is currently not even meeting this protracted standard. The Postal Service's present failure to promptly deliver election-related mail will, if left uncorrected, result in potentially huge numbers of ballots that were placed in the mail days or even weeks before the statutory close-of-polls deadline not arriving in time to be counted.

34. In sum, USPS's slowdown and failure to timely deliver election-related mail will

make each of these deadlines more difficult—if not impossible—for voters to meet. The end result could be an unprecedented number of ballots not being counted despite the voters having complied with all facets of Virginia law, particularly in Albemarle, James City, and Portsmouth Counties. Through no fault of their own, these voters will be denied their fundamental right to vote.

**CAUSES OF ACTION**

**COUNT I**

*Undue Burden on the Right to Vote*
(U.S. Const. Amend. I and XIV, 42 U.S.C. § 1983)

35.     Plaintiffs hereby re-allege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs below as though fully set forth herein.

36.     The United States Constitution guarantees that "all qualified voters have a constitutionally protected right to vote . . . and to have their votes counted." *Reynolds v. Sims*, 377 U.S. 533, 554 (1964).

37.     This fundamental right to vote is rooted in "the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Williams v. Rhodes*, 393 U.S. 23, 30 (1968). These protections are typically articulated as First and Fourteenth Amendment rights in suits against state actors. *Anderson v. Celebrezze*, 460 U.S. 780, 787 (1983); *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). Here, the First and Fifth Amendments provide the same guarantees and forbid the federal government from imposing undue burdens on the right to vote.

38.     Under the *Anderson-Burdick* line of cases, the government cannot unreasonably burden the right to vote—if the character and magnitude of the injury inflicted upon voting rights outweighs the state interests justifying the challenged restriction, then the restriction is unconstitutional.

39. The actions of the Defendants described herein will and have unreasonably and severely burdened the right to vote of Plaintiff's constituents, members, and supporters. As discussed above, because of the mail slowdown, the time voters have to cast their vote will be greatly compressed—if their ballots arrive in time to be cast at all. Of those voters who do receive a ballot in time to fill it out and place it in the mail before the close-of-polls statutory deadline, many nonetheless will be disenfranchised as a consequence of Defendant's slow return speeds. Voters who submit ballots that are defective in ways that have nothing to do with their qualifications to vote may be denied their right to fix these issues by Defendants' failure to deliver their ballots prior to Virginia's ballot-cure receipt notify date. And even those who submit fully valid ballots may not have their ballots counted if Defendants do not deliver them to election officials before the final ballot receipt deadline.

40. In sum, Defendants' slowdown and failure to promptly deliver election-related mail will make it harder for Virginians to exercise their right to vote by mail at every stage of the process, and, absent intervention, it will result in many being disenfranchised.

41. Defendants' actions are not justified by any legitimate governmental interest and, indeed, are contrary to their own policies and best practices. As a result of the actions described herein, Defendants have violated and continue to violate the U.S. Constitution's protections against undue burdens on the right to vote. Indeed, a federal court has already, on multiple occasions, preliminarily enjoined some of these same USPS policies on precisely these grounds, finding that it is likely that the delays they cause for election mail unconstitutionally burden the fundamental right to vote. *See Vote Forward v. DeJoy*, 490 F. Supp. 3d 110, 126 (D.D.C. 2020); *Richardson v. Trump*, 496 F. Supp. 3d 165, 185 (D.D.C. 2020).

**PRAYER FOR RELIEF**

WHEREFORE, this Court should:

A.    Order Defendants to prioritize and expedite delivery of election related mail, and require them to deliver all election mail within Virginia by no later than three days after its entry into the USPS system;

B.    Order Defendants to process all outstanding election mail in Albemarle, James City, and Portsmouth Counties within 24 hours;

C.    Award Plaintiffs their costs, expenses, and reasonable attorneys' fees; and

D.    Grant such other and further relief as the Court deems just, proper, and equitable.

Respectfully submitted, this 22nd day of October, 2021.

*/s/ Jeffrey Breit*
Jeffrey Breit, VA Bar No. 18876
BREIT CANTOR
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, VA 23451
jeffrey@breitcantor.com

Elisabeth Frost*
David R. Fox, VA Bar No. 83894**
Henry Brewster*
ELIAS LAW GROUP LLP
10 G St., N.E., Suite 600
Washington, D.C. 20002
Telephone: (202) 968-4490
Facsimile: (202) 968-4498
efrost@elias.law
dfox@elias.law
hbrewster@elias.law

*Counsel for Plaintiff*

*\*Application to practice pro hac vice forthcoming.*

*\*\*Application for admission to practice in E.D.V.A. forthcoming*